UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JUAN SOTO-ECHEVARRIA, :
    Petitioner, :
 : CIVIL NO. 1:10-CV-1313
v. :
 : (Judge Caldwell)
MIKE WENEROWICZ, *et al.*, :
    Respondents :

*M E M O R A N D U M*

I. *Introduction*

       The pro se petitioner, Juan Soto-Echevarria, shot Tyree Beard to death on a street corner in York, Pennsylvania.  He was placed on trial in the Court of Common Pleas of York County for first-degree murder and criminal conspiracy to commit first-degree murder.  Soto-Echevarria admitted killing the victim, but at his trial presented a voluntary intoxication defense, testifying that he had ingested so much alcohol and drugs on the day and night before the killing that he was guilty only of third-degree murder.  The jury disagreed and decided that the murder had been in the first degree.  When the jury could not decide on the death penalty, he was sentenced to life imprisonment without possibility of parole.

       Soto-Echevarria's 28 U.S.C. § 2254 petition challenging his conviction makes the following claims: (1) the trial court abused its discretion by permitting the Commonwealth to introduce evidence of his gang-related activity with the Latin Kings because its probative value was outweighed by its prejudicial effect; (2) the prosecutor

improperly elicited from Petitioner on cross-examination that Petitioner supported himself by drug dealing and trial counsel was ineffective in not objecting to the questioning; (3) the trial court abused its discretion when it failed to declare a mistrial after counsel for a co-defendant violated *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), by identifying Petitioner as the "other person" mentioned in a co-defendant's statement placed in evidence by a Commonwealth witness; (4) trial counsel was ineffective when he failed to object, or move for a mistrial, when the prosecutor made inflammatory comments about Petitioner's gang membership that were not based on evidence in the record; and (5) trial counsel was ineffective in failing to directly ask Petitioner's toxicology expert, who was testifying as part of Petitioner's voluntary intoxication defense, whether Petitioner could form the specific intent to kill, given the amount of dugs and alcohol he had ingested, when the expert would have stated his opinion that Petitioner could not have formed that intent.[1]

   Petitioner unsuccessfully presented all of his claims either on direct appeal or by way of a petition under the Pennsylvania Post Conviction Relief Act (PCRA). 42 Pa. Con. Stat. Ann. §§ 9541-9546 (West 2007 & Supp. 2011). The Pennsylvania

---

[1] The petition appears to raise three other claims: (1) ineffective assistance of direct-appeal counsel in not raising certain claims of trial-counsel ineffectiveness (Doc. 2, Petitioner's supporting memorandum of law, p.10); (2) trial-counsel ineffectiveness in not objecting to the prosecutor's opening argument (*id.*, p. 18); and (3) trial-counsel ineffectiveness in allowing Petitioner to take the stand when he knew that the prosecutor would be cross-examining about (apparently) the Latin King evidence. (*Id.*, pp. 19-20). However, in his reply, Petitioner specifically denies he is attempting to make a claim of ineffective assistance of counsel on direct appeal and also asserts his claims are limited to the five described above. (Doc. 21, p. 2). We therefore deal only with those five claims.

Superior Court issued unpublished opinions on both direct appeal, (doc. 19-2, CM/ECF p. 59, *Commonwealth v. Soto-Echevarria*, No. 1457 MDA 2005 (Pa. Super Ct. Mar. 31, 2006)), and on appeal from denial of Petitioner's PCRA petition. (Doc. 19-3, CM/ECF p. 12, *Commonwealth v. Soto-Echevarria*, No. 2119 MDA 2008 (Pa. Super. Ct. Oct. 15, 2009)). In one-line orders, the Pennsylvania Supreme Court denied review on direct appeal, (Doc. 19-2, CM/ECF p. 105, *Commonwealth v. Soto-Echevarria*, No. 316 MAL 2006 (Pa. Nov. 1, 2006)), and on appeal in the PCRA proceedings. (Doc. 19-3, CM/ECF p. 69, *Commonwealth v. Soto-Echevarria*, No. 803 MAL 2009 (Pa. April 14, 2010)).

II.  *Standard of Review*

Petitioner asserts that the state courts' resolution of his claims was contrary to clearly established Supreme Court precedent or an unreasonable application of that precedent. *See* 28 U.S.C. § 2254(d)(1). A state court judgment is "contrary to" Supreme Court precedent when it is "diametrically different, opposite in character or nature, or mutually opposed" to "clearly established" decisions of the United States Supreme Court. *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "[A] state court ruling is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply." *McMullin v. Tennis,* 562 F.3d 231, 236 (3d Cir. 2009) (cited cases omitted). "The unreasonable application test is an objective one-a federal court may not grant habeas relief merely because it concludes that the state court

applied federal law erroneously or incorrectly." *Jacobs v. Horn,* 395 F.3d 92, 100 (3d Cir. 2005) (cited cases omitted). If "'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief cannot be granted. *Harrington v. Richter,* __ U.S. __, __, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)(quoted case omitted).

In addition, the claims of ineffective assistance of counsel are governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance,* 556 U.S. 111, __, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009). Thus habeas review of a *Strickland* claim is "doubly deferential." *Id.* at __, 129 S.Ct. at 1420.

III.   *Discussion*

    A.  *The Admission of Evidence of Petitioner's Gang-Related Activity with the Latin Kings Did Not Violate Due Process*

Petitioner claims that the trial court abused its discretion by permitting the Commonwealth to introduce evidence of his gang-related activity with the Latin Kings

because its probative value was outweighed by its prejudicial effect.[2]

We disagree. Petitioner was charged, along with Maximino Hernandez and Axel Rivera-Rodriguez, with conspiracy to commit murder. The evidence established that Petitioner was a member of the Latin Kings and that Hernandez was at least a former member of the gang.[3] Evidence of "gang-related activity" (most of the references were to gang membership, not to specific acts of gang activity) was relevant to conspiracy. *See Reid v. Beard*, No. 04-2924, 2009 WL 2876206, at *6 (E.D. Pa. Sept. 2, 2009) (evidence that the petitioner was a member of the Junior Black Mafia was relevant to establish conspiracy and its admission at the petitioner's trial for murder and criminal conspiracy was not a federal constitutional violation), *aff'd*, 420 F. App'x 156 (3d Cir. 2011) (nonprecedential); *Ford v. Stepanik*, 1998 WL 297626, at *6 (E.D. Pa. June 2, 1998) (evidence that the petitioner was a leader in the "Taylor Street gang" was admissible to show conspiracy). Evidence of gang membership was also relevant to

---

[2] This claim uses the language of an evidentiary claim under state law, and state cases are cited in its support. Respondents point out that state-law claims are not cognizable in habeas corpus. *See Swarthout v. Cooke*, __ U.S. __, __, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011)(federal habeas corpus is only available if the petitioner is in custody in violation of the federal Constitution, treaties, or federal law). It is true that the claim is framed as one under state law, but we may still adjudicate it if the federal claim was fairly presented to the state courts, even if designated as a state-law claim. We believe the federal claim was fairly presented to the state courts. *See Lesko v. Owens*, 881 F.2d 44, 50 (3d Cir. 1989)(state-law claim that evidence was erroneously admitted because its prejudicial effect outweighed its probative value would be considered on habeas review because it was the substantial equivalent of a Fourteenth Amendment due-process claim).

[3] There was no evidence that Rivera-Rodriguez was a member.

5

show Petitioner's motive. *Reid*, 2009 WL 2876206, at *6.[4]  Based on the foregoing, we cannot conclude that the admission of the gang-related activity violated due process. A due process violation requires not just mere error on the part of the trial judge in balancing the admission of the prejudicial evidence. Instead, "the evidence's probative value" must be "conspicuously outweighed by its inflammatory content . . . ." *Bronshtein v. Horn*, 404 F.3d 700, 730 (3d Cir. 2005)(quoting Lesko, 881 F.2d at 52.).[5]

> B. *Trial Counsel Was Not Ineffective in Failing to Object When the Prosecutor Improperly Elicited From Petitioner on Cross-Examination that Petitioner Supported Himself by Drug Dealing*

At the trial, Petitioner took the stand in his own defense. On cross-examination, the prosecutor asked him how he earned his money at a certain period of time. Petitioner replied that he "sold weed." Without objection from counsel, the prosecutor then asked if he was a "drug dealer," and Petitioner answered yes. (Doc. 19-1, CM/ECF p. 123).

---

[4] Soto-Echevarria's murder of Tyree Beard was precipitated by the shooting of Alberto Sanabria (which Sanabria survived). There was evidence at trial that shortly after Sanabria was shot, Petitioner called him his "brother," was upset about the shooting, and said he "was going to kill whoever did that to his brother." (Doc. 19-1, trial transcript, CM/ECF p. 83).

[5] As part of this claim, Petitioner also generally argues that the prosecutor violated due process by repeatedly referring to him as a Latin King member. We have already decided there was no due-process violation by admitting evidence of his membership in the Latin Kings, and our review of the transcript does not convince us that this general argument about the prosecutor's continued references to the Latin Kings is correct.

Petitioner claims his lawyer was ineffective in not objecting to this questioning, which was intended to prejudice the jury against him.  As noted, claims of ineffective assistance of counsel are governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  *Strickland* sets forth a two-prong test to establish ineffective assistance of counsel.  First, counsel's performance must be deficient.  Trial counsel's representation must have fallen "below an objective standard of reasonableness considering all the circumstances." *Jacobs v. Horn,* 395 F.3d 92, 102 (3d Cir. 2005)(citing *Strickland*).  "Counsel's reasonableness must be assessed on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*  Second, counsel's deficient performance must have prejudiced the defense. *Id.* (quoting *Strickland*).  A petitioner must "show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 105 (quoting *Strickland*).  A petitioner "need not show that counsel's deficient performance 'more likely than not altered the outcome in the case'-rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*).  "This standard is not a stringent one." *Id.* (quoted case and internal quotation marks omitted).

We begin by noting that although the superior court relied on state law dealing with an ineffective-assistance claim,  that law is "not contrary to *Strickland*." *Jacobs, supra,* 395 F.3d at 106 n.9.  Hence, we may consider the federal ineffectiveness

claim, with the question being "whether the [superior court's] decision involved an unreasonable application of *Strickland*." *Id.*[6]

In rejecting this claim, the superior court essentially passed over the first prong of *Strickland* and decided that Petitioner could not show he had been prejudiced by counsel's failure to object.  The court reasoned that Petitioner had already admitted to the jury that he had killed the victim and that they also knew he was a lifelong heavy marijuana user (doc. 19-1, CM/ECF p. 146), so that "the incremental information" that he dealt marijuana could not have changed the outcome of the trial.  (Doc. 19-3, CM/ECF pp. 21-22).  We cannot say this is an unreasonable application of *Strickland*, especially when we consider, as Respondents urge us to do, that Petitioner had already testified as part of his voluntary intoxication defense that the day before the murder he had begun a spree of drinking and taking illegal drugs.  We therefore reject this claim.

### C. *There Was No* Bruton *Violation*

Petitioner next claims that the trial court abused its discretion when it failed to declare a mistrial after counsel for a co-defendant violated *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).  In light of the Confrontation Clause of the federal Constitution, U.S. Const. amend. VI, *Bruton* precludes the introduction into evidence of a statement of a non-testifying co-defendant naming the defendant as a

---

[6]  "In considering a section 2254 petition, "we review the 'last reasoned decision' of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009)(quoting *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008).  That would be the superior court's unpublished opinions.

participant in the crime "even if the trial court instructs the jury to consider the statement only against the non-testifying co-defendant." *Vazquez v. Wilson*, 550 F.3d 270, 279 (3d Cir. 2008).

At trial, a police officer testified about a statement that co-defendant Hernandez gave him about a month after Beard had been shot concerning Hernandez's and Petitioner's involvement in the shooting, except that at trial Petitioner was identified only as "the other person." The police officer testified that Hernandez said that the other person was a passenger in a car Hernandez was driving when it came to the street corner where Beard was located; that the other person leaned across him and shot Beard through the driver's side window; and that this other person later bragged about killing the victim. (Doc. 19-1, CM/ECF p. 90). On cross-examination of the officer, Hernandez's counsel began a question by saying, "And he [Hernandez] told you how Moncho, the other individual, told him to –- said Go, go did he not?"[7] (Id. CM/ECF p. 93).

At the conclusion of the officer's testimony, the trial court gave a cautionary instruction that the statement could only be used against Hernandez. (*Id.*, CM/ECF p. 93-94). At a sidebar immediately following, Petitioner's trial counsel objected that once it became apparent that "the other person" was Petitioner, the statement should have been stricken. At that point, the court asked Hernandez's counsel if Hernandez was going to testify, and counsel said yes. (*Id.*, CM/ECF p. 94). Hernandez did in fact testify, and Petitioner's counsel cross-examined him. (Id., CM/ECF pp. 153-73).

---

[7] "Moncho" is Petitioner's nickname, which the jury knew from previous testimony.

There was no *Bruton* violation in these circumstances. *Bruton* prohibits the introduction into evidence of the statement of a *non-testifying* co-defendant. Hernandez testified.

Petitioner objects that under *Vasquez*, 350 F.3d at 277-78, and *United States v. Sandini*, 888 F.3d 300, 305-06 (3d Cir. 1989), his *Bruton* claim has to be evaluated from the point view of the trial court at the time it made its ruling. We do not see how this assists him. At the time the trial court ruled, co-defendant's counsel affirmatively stated that co-defendant would be testifying, and in fact Hernandez did testify. We see no constitutional violation in these circumstances.

Petitioner also seems to argue that *Bruton* was violated from the mere fact that the statement was admitted into evidence and that his opportunity to cross-examine Hernandez is thus irrelevant to that claim. But as noted above, *Bruton*, based on the Confrontation Clause, does not apply when the co-defendant testifies, thus making the ability to cross-examine relevant.[8]

---

[8] As part of this claim, Petitioner also argues he was entitled to a severance of his trial from the other defendants. Aside from whether Petitioner exhausted this claim, see 28 U.S.C. § 2254(b)(2), it has no merit as it also is based on a *Bruton* violation.

10

> D. *Trial Counsel Was Not Ineffective for Failing to Object, or Move for a Mistrial, When the Prosecutor Made Inflammatory Comments about Petitioner's Gang Membership that Were Not Based on Evidence in the Record*

Petitioner argues that his trial counsel was ineffective in not objecting when the prosecutor made a remark in his closing that was not based on evidence in the record. In his closing, the prosecutor said:

> They are making a lot to do about the Latin Kings, and this, that. Who do you go to when you are times of stress or you are important affair in your life?[9] You go to your family. Cops go to cops. Lawyers go to lawyers. Latin Kings go to Latin Kings. Juan Soto-Echevarria is so angry over his brother, as he described it, Jun-Jun being shot, Mr. Gover, he went to a person of strength. He went to another King. He went to a crown. He went to somebody he could rely on. In the Latin King culture, if you call it, it is a group like cops are groups, lawyers are groups, sheriffs are groups. They have a saying that they put their hand on their chest, I will die for you. You are the flesh of my flesh, the blood of my blood, the son of my mother –
>
>    [counsel for co-defendant Rivera-Rodriguez]: Object, Your Honor.
>
>    THE COURT: I will sustain the objection. Ladies and gentlemen, I don't believe there was any evidence of that in the trial. You should disregard it.

(Doc. 19-1, CM/ECF p. 210)(footnote added).

Petitioner bases his claim on his counsel's failure to object to the "flesh of my flesh" remark because there was no evidence introduced at trial that this was a Latin

---

[9] This is how the sentence appears in the record.

King saying. He maintains that the prosecutor made the remark to prejudice his defense of diminished capacity because of voluntary intoxication.

We reject this claim. Assuming Petitioner has satisfied the first prong of the *Strickland* standard, that counsel's performance was deficient, he has not established the second, that counsel's performance prejudiced the defense. "Strong evidence, combined with curative instructions, normally is sufficient to preclude prosecutorial misconduct from depriving a defendant of due process." *Fisher v. Beard*, No. 02-1764, 2009 WL 2476619, at *19 (E.D. Pa. Aug. 10, 2009). Here, counsel for a co-defendant did object to the remark, the court sustained the objection, and immediately advised the jury to disregard it.

Further, there was strong countervailing evidence to Petitioner's voluntary intoxication defense.[10] The murder occurred at about 6:00 a.m. on June 14, 2003. (Doc. 19-1, CM/ECF p. 54). Petitioner did testify that he ingested great quantities of alcohol and drugs in the day and night before the murder.[11] However, Petitioner himself testified

---

[10] Pennsylvania allows diminished capacity to reduce first-degree murder to third-degree by eliminating the requisite intent to kill. *Saranchak v. Beard*, 616 F.3d 292, 307 (3d Cir. 2010). Voluntary intoxication can be used to establish diminished capacity. *Id.* However, the evidence must show "that the defendant was overwhelmed to the point of losing his faculties and sensibilities." *Id.* (quoted case and internal quotation marks omitted).

[11] Petitioner testified that on June 13, 2003, the day before the murder, he awoke at about 10:00 a.m. and began smoking marijuana until about 5:00 p.m., about five or six "blunts." During this time he also drank an unspecified number of Heineken beers. He continued drinking beer and smoking marijuana until about 8:00 p.m. At around 9:00 p.m., he took two hits of Ecstasy and then went to a club where he began taking shots of whiskey (three or four) and shots of tequila (three or four) and continued drinking Heinekens. He also took two more Ecstasys. He left the club about 3:00 a.m. on the morning of June 14, after purchasing five or six six-packs of beer, which he took to a friend's house, where four people

that he was able to drive co-defendant Rivera-Rodriguez to a gun shop to purchase a handgun at around 8:40 p.m. on June 13 (doc. 19-1, CM/ECF pp. 127; 98-99); sometime after 3:00 a.m. on June 14 was able to take one of the guests back to the guest's own house before driving himself to co-defendant Hernandez's house (Doc. 19-1, CM/ECF p. 131-32); after visiting Sanabria in the hospital in the early morning hours of June 14, was able to direct Hernandez to drive to a gas station so he could buy more blunts to smoke marijuana (*id.*, CM/ECF p. 133); was then able to shoot the victim four times when he and Hernandez encountered him at an intersection; and then almost immediately after was able to try to convince a witness to the murder not to reveal anything. (*Id.*, CM/ECF pp. 37, 134-35, 136).

In these circumstances, we cannot say that the superior court's resolution of the ineffectiveness claim was contrary to, or an unreasonable application of, Supreme Court precedent.

### E. *Trial Counsel Was Not Ineffective in Failing to Directly Ask Petitioner's Toxicology Expert Whether Petitioner Could Form the Specific Intent to Kill*

Petitioner claims trial counsel was ineffective in failing to directly ask Petitioner's toxicology expert, who was testifying as part of Petitioner's voluntary intoxication defense, whether Petitioner could form the specific intent to kill, given the amount of dugs and alcohol he had ingested. At the PCRA hearing, the expert testified

---

altogether continued to drink. (Doc. 19-1. CM/ECF p. 86). He consumed "a lot" of the beers there. (Doc. 19-1, CM/ECF pp. 114-19).

that if asked that question he would have opined that Petitioner could not have formed the requisite intent. (Doc. 19-2, CM/ECF pp. 180-81).

The superior court disposed of this claim, in part, on the basis that Petitioner could not show prejudice from the failure of trial counsel to specifically ask the expert about Petitioner's ability to form the requisite intent. The court noted that the expert did testify about the effects upon Petitioner of his consumption of alcohol and drugs before the murder and that his counsel argued the defense to the jury.

Petitioner's expert testified at trial about the effect on Petitioner from the amount of drugs and alcohol the latter said he had ingested. The expert said he "would have had significant effects on his judgment," "his thought processes were impaired," "[h]e wasn't thinking straight." (Doc. 19-1, CM/ECF p. 147). Upon further questioning, the expert stated that, "in [his] opinion," Petitioner was not "able to perceive things correctly, that his emotions were far different than they are normally, and that he was significantly impaired in judgment and ability to comprehend and a variety of other emotions." (*Id.*, CM/ECF p. 148). He further opined that under the effects of alcohol and Ecstasy, Petitioner could have had the paranoid thought that, as Petitioner testified, he shot in self-defense because he thought someone at the corner was pulling something out of a part of his body. (*Id.*). In his closing, Petitioner's trial counsel argued directly that the expert's testimony supported the defense of voluntary intoxication because it established that he lacked the specific intent to kill and that he therefore could not be found guilty of first-degree murder. (*Id.*, CM/ECF pp. 182, 183).

In these circumstances, we cannot say that the superior court's ruling was contrary to *Strickland* or an unreasonable application of that case and we therefore reject this claim.

IV.  *Conclusion*

We will issue an order denying the section 2254 petition.  The order will also deny a certificate of appealability, based on the analysis in this memorandum. However, Petitioner is advised that he has the right for thirty (30) days to appeal our order denying his 2254 petition, *see* 28 U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals. *See* Federal Rule of Appellate Procedure 22; Local Rule of Appellate Procedure 22.1.

        /s/ William W. Caldwell
        William W. Caldwell
        United States District Judge

Date: January 23, 2012

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JUAN SOTO-ECHEVARRIA, :
    Petitioner, :
: CIVIL NO. 1:CV-10-1313
v. :
: (Judge Caldwell)
MIKE WENEROWICZ, *et al.*, :
    Respondents :

*O R D E R*

AND NOW, this 23rd day of January, 2012, it is ordered that:

  1.  The petition (Doc. 1) for a writ of habeas corpus under 28 U.S.C. § 2254 is denied.

  2.  A certificate of appealability is denied.

  3.  The Clerk of Court shall close this file.

                        /s/ William W. Caldwell
                        William W. Caldwell
                        United States District Judge